Case 2:15-cr-00652   Document 79   Filed on 12/01/20 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
December 02, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff, | §<br>§<br>§ | |
| v. | § | CRIMINAL NO. 2:15-652 |
| | § | |
| JUSTIN RYAN SERNA,<br>  Defendant. | §<br>§<br>§ | |

### MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Justin Ryan Serna's Motion for Order Reducing Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 75), to which the United States of America (the "Government") has responded (D.E. 77) and Defendant has replied (D.E. 78).

### I. BACKGROUND

On February 11, 2015, the stepfather of "Jane Doe", a 16-year-old female, contacted the Corpus Christi Police Department and reported that he was using his stepdaughter's computer when he found sexually explicit text messages and photographs between Jane Doe and Defendant. The victim's stepfather knew Defendant because the two men had previously worked together. Officers reviewed the messages and interviewed Jane Doe the same day. She stated she had known Defendant since she was nine or ten years old, and that he began speaking to her and being nice to her in December of 2014. Soon after, Defendant sent Jane Doe a friend request on Facebook and began to communicate with her on a regular basis. Defendant acknowledged that Jane Doe's profile listed her age as 18 but stated that he knew she was 16. Soon after they began communicating, Defendant asked Jane Doe to have sex with him. Defendant inquired as to the relationship status of one of her friends and whether the friend was still a virgin, and stated that he would not hesitate to have sex with the friend. He also inquired as to whether Jane Doe had a

1

friend that could join them during sex. Defendant advised Jane Doe that the police could track Facebook conversations and sent her his cell phone number so they could communicate by text message. Jane Doe admitted to sending nude pictures of herself to Defendant at his request.

Agents forensically examined Jane Doe's electronic devices and found 3 SMS messages and 1,382 text messages to and from Defendant on her cell phone and 2,591 messages from her computer. Several of those messages referenced Defendant's intent to have vaginal and oral sex with Jane Doe. There were also 24 images exchanged between Jane Doe and Defendant, 11 of which were sexual in nature and 3 of which were considered child pornography.

Defendant pled guilty to sexual exploitation of a child. He has served roughly 64 months (36%) of his 180-month sentence and has a projected release date, after good time credit, of April 24, 2028. He now moves the Court to reduce his sentence to time served and add a condition of home confinement at the outset of his term of supervised release because his underlying medical conditions (pre-hypertension and latent tuberculosis infection) make him particularly vulnerable to severe illness or death should he contract COVID-19 while in prison. His father submitted a written request for compassionate release on Defendant's behalf with the Warden at FCC Beaumont on April 22, 2020, but the request was denied. *See* D.E. 75-3, 75-4. The Government opposes early release because: (1) the combination of pre-hypertension and latent tuberculosis does not increase the risk of severe illness should Defendant contract COVID-19, and (2) a sentence reduction would be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a) given the severity of Defendant's conduct.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

>    **(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>    >    (1) in any case—
>    >    >    (A) the court, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant after the defendant* has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>    >    >    >    (i) *extraordinary and compelling reasons warrant such a reduction . . .* and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

The applicable United States Sentencing Commission policy statement provides that extraordinary and compelling reasons for early release exist where:

>    **(A) Medical Condition of the Defendant.—**
>
>    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>    (ii) The defendant is—
>
>    >    (I) suffering from a serious physical or medical condition,
>    >    (II) suffering from a serious functional or cognitive impairment, or
>    >    (III) experiencing deteriorating physical or mental health because of the aging process,
>
>    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>    **(B) Age of the Defendant. –**
>
>    The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

>    (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;
>
> **(C) Family Circumstances. –**
>
>    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> **(D) Other Reasons. –**
>
>    As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the

offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7).

> With respect to motions for compassionate release based on COVID-19:
>
> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

**III. ANALYSIS**

Defendant is 33 years old. He is pre-hypertensive with a self-reported family history of diabetes, but is otherwise "young and healthy" with "absolutely no definite indications [m]edically for [reduction in sentence]-Consideration." D.E. 77-2, p. 1. Defendant was infected with the bacterium that causes tuberculosis (TB) at age 2 and received preventative treatment, but he continues to test positive for TB. *See* D.E. 75-1, 75-2. According to Defendant, these combined medical conditions—pre-hypertension, family history of diabetes, and latent TB infection—increase his risk of severe illness should he contract COVID-19 in prison. He also

5

emphasizes that he "has been a model inmate while in BOP custody," earned an associate's degree, and "has earned many certificates of completion for classes and programs and has no disciplinary referrals." D.E. 75, p. 18; D.E. 75-5, 75-6.

While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone. *See* U.S.S.G. § 1B1.10, app. n.1(B)(iii).

In support of his claim that his childhood TB diagnosis makes him particularly vulnerable to severe illness or death from COVID-19, Defendant cites a May 2020 study highlighted in the *News Medical* online journal, wherein researchers "hypothesized that the CoV infections could be causing lung inflammation that leads to reactivation of dormant TB in the lung." *See* Dr. Liji Thomas, *COVID-19 could accelerate activation of dormant tuberculosis (TB)*, https://www.news-medical.net/news/20200510/COVID-19-could-accelerate-activation-of-dormant-tuberculosis(TB).aspx (citing Lekhika Pathak, *et al.*, *Corona virus activates a stem cell mediated defense mechanism that accelerates activation of dormant tuberculosis: implications for the COVID-19 pandemic*, BIORXIV (May 6, 2020), https://www.biorxiv.org/content/10.1101/2020.05.06.077883v1). Defendant also cites *Doe v. Barr*, wherein the district court granted a temporary restraining order and ordered the release of a petitioner in deportation proceedings who had been in ICE custody for a year with no bond hearing, "given the petitioner's combination of medical issues (chronic PTSD, depression, and latent tuberculosis), the COVID-19 pandemic, [and] the conditions of confinement at Yuba County Jail . . . ." *Doe v. Barr*, 2020 WL 1820667, at *11 (N.D. Cal. Apr. 12, 2020). In reaching its decision, the *Barr* Court cited a March 2020 non-peer-reviewed "observational case-control study of 36 COVID-19 cases from

Shenyang, China, [which] found tuberculosis history (both of active TB and latent TB) to be an important risk factor for SARS-CoV-2 infection." Yu Cheng, *et al.*, *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity* (Mar. 16, 2020), https://www.medrxiv.org/content/10.1101/2020.03.10.20033795v1. The study also found that "[p]atients with active or latent TB were more susceptible to SARS-CoV-2, and COVID-19 symptom development and progression were more rapid and severe." *Id.* A handful of other courts have since cited *Doe v. Barr* for the conclusion that latent TB increases the risk of severe complications due to COVID-19. *E.g.*, *United States v. Alghaithi*, 2020 WL 6305485, at *3 (D. Ariz. Oct. 28, 2020); *United States v. Watkins*, 2020 WL 4016097, at *3 (E.D. Mich. July 16, 2020); *United States v. Johnson*, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020) (stating latent tuberculosis increases a person's risk of severe complications); *United States v. Atwi*, 2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020) (finding extraordinary circumstances based on the risk of a co-infection of tuberculosis and COVID-19 "as both are respiratory diseases that affect the lungs"). *See also United States v. Burke*, 2020 WL 3000330, at *2 (D. Neb. June 4, 2020) ("Research has yet to conclusively establish the risks associated with either latent tuberculosis or brain injury, but the known pulmonary comorbidities and symptoms of COVID-19 and increasing evidence of vascular complications make those conditions relevant as well.").

Other courts, meanwhile, have denied compassionate release in cases where the defendant received preventative treatment for TB and was asymptomatic. *E.g.*, *United States v. Rodriguez*, 468 F. Supp. 3d 681, 685 (E.D. Penn. June 24, 2020) ("[W]hile Defendant's medical records indicate that he has latent TB, the records also indicate that his condition is controlled, he is asymptomatic, and he has successfully completed his treatment protocol."); *United States v. Spikes*, 2020 WL 6044614, at *5 (E.D. Pa. Oct. 13, 2020) ("Although Mr. Spikes's medical

7

records indicate that he has latent tuberculosis, the same records reflect that he completed the prophylactic course of treatment, that his condition is controlled, and that he is currently asymptomatic. COVID-19's comorbidity with latent tuberculosis is far from known."); *United States v. Sattar*, 2020 WL 3264163, at *3 (S.D.N.Y. June 17, 2020) ("Although tuberculosis may be a risk factor for severe illness resulting from COVID-19, Sattar has not demonstrated that his tuberculosis, which is latent, is either not controlled currently or that it could not be addressed adequately at FCI-Schuylkill."). Moreover, in those "few cases in which inmates with latent TB have been granted compassionate relief during the COVID-19 pandemic . . . , there were other critical circumstances that contributed to the court's decision to grant release, including the presence of another, more critical underlying condition that increased the inmate's COVID-19 risk, advanced age, and/or an upcoming release date." *Rodriguez*, 468 F. Supp. 3d at 685.

The Government responds that the studies relied upon by Defendant have not been peer reviewed in the more than six months since their online publication, and the Centers for Disease Control and Prevention (CDC) has yet to identify latent TB, pre-hypertension, or a family history of diabetes as underlying medical conditions that increase—or even might increase—an individual's COVID-19 vulnerability.[1] "The CDC website states only that 'TB patients who are at least 65 years old; have respiratory compromise from their TB; or other medical conditions, including HIV and other immunocompromising conditions, are at greater risk for severe

---

[1]. According to the CDC, older adults (age 65 and above) and people of any age who have certain underlying medical conditions are at higher risk for severe illness from COVID-19. *People with Certain Medical Conditions*, CDC (Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. People of any age with the following conditions *are* at increased risk of severe illness from COVID-19: Cancer, Chronic kidney disease; COPD (chronic obstructive pulmonary disease); Immunocompromised state from solid organ transplant; Obesity; Severe Obesity; Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; Sickle cell disease; Smoking; and Type 2 diabetes mellitus. People with the following conditions *might be* at an increased risk for severe illness from COVID-19: Asthma (moderate-to-severe); Cerebrovascular disease; Cystic fibrosis; Hypertension; Immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; Neurologic conditions, such as dementia; Liver disease; Overweight; Pregnancy; Pulmonary fibrosis; Thalassemia; and Type 1 diabetes mellitus.

COVID-19 infection.'" *Rodriguez*, 468 F. Supp. 3d at 685 (quoting CDC, *Tuberculosis and Public Health Emergencies*, https://www.cdc.gov/tb/education/public-health-emergencies.htm). The Court further notes that a non-peer-reviewed statistical analysis from August of 2020 suggests that "LTBI may confer an immunological protective effect against COVID-19." Harutaka Takahashi, *Role of Latent Tuberculosis Infections in Reduced COVID-19 Mortality: Evidence from an Instrumental Variable Method Analysis*, MEDICAL HYPOTHESES (Aug. 26, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7448767/.

Assuming, without deciding, that Defendant is at an increased risk of COVID-19 complications due to his childhood TB diagnosis, the Court nonetheless finds that any potential risk to his health should he contract COVID-19 in prison is outweighed by the danger to the community—especially its children—if he is released. Defendant is a sexual predator. He solicited a girl, who he knew was only 16 years old, to have sex with him. In furtherance of his crime, Defendant convinced his victim to send him pornographic photos of herself. He also asked her if one of her underage friends might be interested in having sex with him or both himself and the victim. As the Government points out, Defendant's lack of success was likely only because his victim's stepfather thwarted his plans.

The Court further finds that the § 3553(a) factors, as considered in the specific context of the facts of Defendant's case, do not warrant a reduction in his sentence. The Court sentenced Defendant to serve 180 months—the statutory mandatory minimum sentence for this crime. Releasing him after he has only served one third of his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from further crimes.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Order Reducing Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 75) is **DENIED**.

It is so **ORDERED** this 1st day of December, 2020.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE